# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| DARNELL TINKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:08-CV-181 PPS |
| | ) | |
| KENNETH FRIES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Darnell Tinker, a pro se prisoner, filed this lawsuit while he has been awaiting trial in the Allen County Jail. Tinker filed a complaint which he amended once and proposes to amend again. (DE 1, 9, 10.) In those complaints, Tinker claims that following his April 14, 2008 arrest, he was initially placed in "lock-up" and was denied phone calls and "basic personal hygiene necessities," such as soap, a toothbrush, and bedding. (DE 1 at 3.) Three days later, Tinker was assigned to a two-man cell already occupied by two men. Tinker was relegated to sleeping on the floor with a mat. Tinker contends that sleeping on the floor presented health and safety hazards because his cellmates could step on him. Based on Tinker's allegations, this arrangement lasted no more than four months.

Tinker complains of various other conditions in the jail including that the cell windows are covered by an opaque material that reduces natural light and prevents prisoners from seeing outside. He further complains that the meals are inadequate because "they do not meet the daily nutrition requirements to sustain reasonable health of the plaintiff or any other inmate." (DE 1 at 3.) Tinker declares "[a]ll individuals at this facility are losing or have lost substantial amounts of weight" because of inadequate food servings and the prevalence of airborne diseases like "common colds and flu viruses." (*Id.*) In addition, the jail does not provide prisoners with fresh

laundry on a weekly basis or issue underwear. Prisoners must purchase underwear from the commissary or do without. Tinker does not allege that he has been deprived of underwear, but does object that he cannot wear his choice of underwear. Tinker further complains that, although the prisoners may walk around the unit, prisoners do not have access to the gym or other exercise opportunities. Nor are there recreational activities like chess or checkers to pass the time. Instead, prisoners are limited to playing card games to cure their boredom. Prisoners in Tinker's jail housing unit must also remain in their cells for fifteen to sixteen hours each day, while other pretrial detainees get more time outside.

Tinker also takes issue with the Allen County Jail's visitor policy, which permits prisoners a twenty minute visit every other week, whereas other prisons allow one hour. He says that the jail does not permit minors under eighteen to visit prisoners, but he does not allege the visiting policy prevented him from receiving any visitor.

According to Tinker, a classification breakdown by the jail causes non-violent prisoners to be housed with violent offenders and misdemeanants with felons. The sheriff and classification officer allegedly allow officers to place prisoners on "dead lock" without a disciplinary hearing. Similarly, Tinker states the sheriff and the classification officer allow prisoners' personal property to be taken and destroyed without notice. He presumes the jail destroyed some photographs, a drivers manual, and two postcards sent to him by mail.

Tinker's complaint [Pro Se Compl., DE 1], and the supplement to the complaint [Am. Compl., DE 9], name the sheriff (Kenneth C. Fries), the jail commander (Charles Hart), and the classification director (Achim Cullman) as defendants in their official and individual capacities. Tinker's complaints largely address conditions that affect all prisoners at Allen County Jail. But for reasons explained in my Order denying class certification [DE 12], Tinker cannot maintain a

2

pro se class action lawsuit on behalf of other inmates. Therefore, I will only consider those conditions that specifically apply to Tinker.

Pursuant to 28 U.S.C. § 1915A, the Court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Courts apply the same standard under Section 1915A as when addressing a motion under Rule 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). Federal Rule 12(b)(6) provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted.

The pleading standards were recently retooled by the Supreme Court. In the context of a motion to dismiss for failure to state a claim, the Court stated that the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombley*, 127 S.Ct. 1955, 1964-65 (2007). Instead, the Court held that the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id*. at 1965. Two weeks later, the Supreme Court decided *Erickson v. Pardus*, 127 S. Ct. 2197 (2007). In *Erickson,* the Court also took up the issue of pleading standards, but this time in the context of pro se litigation. In *Erickson*, the Court stated that "[s]pecific facts are not necessary" to meet the requirements of Rule 8(a). The Court further noted that a "document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id*. at 2200. In an effort to reconcile *Twombley* and *Erickson*, the Seventh Circuit has read those cases together to mean that "at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the

3

type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. AT&T Mobility*, 499 F.3d 663, 667 (7th Cir. 2007).

The Eighth Amendment's proscription against cruel and unusual punishments applies only to persons convicted of crimes and the rights of pretrial detainees are derived from the Fourteenth Amendment's Due Process Clause; but the same standard applies to both convicted prisoners and pretrial detainees. *Palmer v. Marion County*, 327 F.3d 588, 593 (7th Cir. 2003). A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The Eighth Amendment requires prison officials to ensure prisoners receive adequate food, clothing, and shelter; but it does not mandate comfortable prisons. *Id.* at 832.

Tinker's complaints that he had to sleep on the floor with a mat for, at most, four months in a two-man cell does not meet the bar of cruel and unusual punishment. As the Seventh Circuit explained:

> These short-term impositions are simply part of the general level of discomfort anyone can expect to experience while in custody. Because there are more inmates than jailers at every facility, it is impossible for a prisoner or a pretrial detainee to expect an immediate response from jail officials for every request made. Though it is possible that these impositions may rise to the level of a constitutional violation if they lasted for six months or a year, it is not unreasonable for a pretrial detainee to expect to experience a short-term imposition on a basic human necessity.

*Tesch v. County of Green Lake*, 157 F.3d 465, 476 (7th Cir.1998). *But see Townsend v. Fuchs*, 522 F. 3d 765 (7th Cir. 2008) (observing that forcing prisoner to sleep on "wet, moldy, foul-smelling" mattress on a concrete floor for 59 days was sufficiently serious enough condition for

Eighth Amendment violation). Without more, simply being required to sleep on the floor with a mat for a few months is not cruel and unusual punishment. Tinker provides no indication of what safety or health risks he was exposed to as a result of his sleeping arrangement, other than a suggestion that his cell mates could have stepped on him when they exited their beds. Even giving Tinker the benefits of the inferences he is entitled to at this stage, his allegations regarding his sleeping conditions do not state a claim under the Fourteenth Amendment.

Tinker's complaints about the frequency of the laundry schedule, and lack of underwear choice, also do not sufficiently allege a constitutional harm. *See Martin v. Tyson*, 845 F.2d 1451, 1457 (7th Cir. 1988). The same is true for his claim that he had to go without toiletries for two days when he was originally in "lock-up." This was a short term (two day) imposition that is not implicated by the Fourteenth Amendment. *Tesch,* 157 F.3d at 476.

Although a total lack of exercise would state a claim where "movement is denied and muscles are allowed to atrophy," *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985), Tinker can walk around the unit for the several hours a day when he is not confined to his cell. His complaint that the jail does not allow prisoners to use the gym or provide recreational activities such as chess or checkers is not actionable, because the denial of "desirable, entertaining diversions [does] not raise a constitutional issue." *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988).

Tinker's complaints about the jail's visitor policy and prohibition against certain types of incoming mail also fall short. Prison administrators are afforded wide-ranging deference in adopting and executing the policies and practices that in their judgment are necessary to preserve order, discipline and security. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). As the Supreme Court noted:

5

> The very object of imprisonment is confinement. Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration. And, as our cases have established, freedom of association is among the rights least compatible with incarceration. Some curtailment of that freedom must be expected in the prison context.

*Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). Accordingly, Tinker's complaints about the jail's visiting and mail policies do not state a claim. And to the extent Tinker attempts to claim that the jail's improperly confiscated his mail without due process, that claim must fail because he has an adequate post-deprivation remedy under the Indiana Tort Claims Act. *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001); *see also* IND. CODE § 34-13-3-1 *et seq*.

Tinker complains that the jail does not provide the prisoners with nutritionally adequate meals, which has resulted in his substantial weight loss. This appears to be a claim against the defendants in their official capacity. In order to establish a claim in an official capacity suit, a plaintiff must demonstrate that the actions on which liability is predicated took place pursuant to an official policy, widespread custom, or deliberate act of government decision-maker. *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir 2008). Giving Tinker the benefit of the inferences to which he is entitled at the pleading stage, his claims that the jail did not give him and others nutritionally adequate food implicates an official policy or custom. Since the sheriff has the statutory duty to run the county jail, INDIANA CODE § 36-2-13-5(a)(7), Tinker may sue Fries in his official capacity as to this claim.

Finally, Tinker seeks to further supplement his complaint to add claims against the jail commander, Charles Hart. [DE 10] There are two allegations against Hart. First, Tinker alleges that Hart placed him in disciplinary segregation without due process. But this claim fails because due process safeguards only apply to prison disciplinary actions when the punishment imposed

affects the duration of the prisoner's sentence or inflicts an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-484 (1995). Tinker does not allege either with respect to his segregation.

But Tinker's second claim against Hart is more troubling. Tinker says that Hart assigned a dangerous, mentally-ill patient named Maddox to his cell who later attacked Tinker in his sleep. Tinker maintains that Hart acted with deliberate indifference to Tinker's safety by assigning Maddox to Tinker's cell when Maddox was purportedly involved in an altercation with three jail employees and had to be stunned with a taser gun and restrained less than twenty-four hours before he was placed in the cell with Tinker. Prison officials have a duty to protect prisoners from violence by other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). A prison officials' failure to do so may run afoul of the Eighth Amendment if the defendant was both (1) aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and (2) he actually drew that inference." *Id.* at 837. Giving Tinker the benefit of the inferences to which he is entitled at this stage, he states a claim that Hart was deliberately indifferent to the risk that he would be assaulted when he placed Maddox in Tinker's cell. Tinker may only pursue this claim against Hart in his individual capacity since there are no allegations in the complaint that Hart was acting under a policy or practice of purposefully housing violent and nonviolent offenders together so that attacks could be made on the latter.

Therefore, the Court:

(1) **GRANTS** Darnell Tinker, leave to proceed against Allen County Jail Sheriff, Kenneth Fries, in his official capacity on the Fourteenth Amendment claim that the Allen County Jail denied him adequate nutrition;

(2) **GRANTS** Darnell Tinker, leave to proceed against Charles Hart in his individual

capacity on the Fourteenth Amendment claim that Hart was deliberately indifferent to the risk he would be attacked by a violent prisoner that Hart knowingly placed in Tinker's cell;

(3) **DISMISSES** all other claims;

(4) **DISMISSES** Achim Cullman;

(5) **DIRECTS** the Clerk of the Court to transmit the summonses and USM-285s to the United States Marshals Service along with copies of this order and copies of the complaint;

(6) **GRANTS** the motion [DE 10] to file the supplemental complaint;

(7) **DIRECTS** the Clerk of the Court to **FILE** the proposed supplemental complaint [DE 10-2];

(8) **DIRECTS** the United States Marshals Service, pursuant to 28 U.S.C. § 1915(d), to effect service of process on Kenneth Fries and Charles Hart for the purpose of answering the claims upon which the Court granted Tinker leave to proceed; and

(9) **ORDERS**, pursuant to 42 U.S.C. § 1997e(g)(2), Kenneth Fries and Charles Hart to file an answer, as provided for in the Federal Rules of Civil Procedure and N.D. IND. L. R. 10.1, only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

**SO ORDERED.**

**ENTERED**: January 12, 2009.

                                               s/ Philip P. Simon
                                               PHILIP P. SIMON, JUDGE
                                               UNITED STATES DISTRICT COURT